IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

MARILLE GERDES,

    Plaintiff,

    v.

PATRICK DONAHOE,
Postmaster General of the United
States,

    Defendant

No. 10 C 6780

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant's motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff Marille Gerdes (Gerdes) alleges that she was employed by the United States Postal Service (USPS), and that in October of 1991, March of 1992, and July of 1992, she submitted physician's notes requesting a light duty accommodation. The physician's notes allegedly indicated that Gerdes had standing and lifting restrictions. Beginning in July 1992, Gerdes allegedly submitted similar physician's notes every thirty days, and in each instance, USPS allegedly granted Gerdes'

1

request for a light duty accommodation.

In May of 1995, Gerdes allegedly began working a "Timekeeping" job, which did not require submission of physician's notes. In March of 2002, the "Timekeeping" position was allegedly abolished, and Gerdes allegedly bid a "generic job." From March 2002 until December 2007, Gerdes allegedly submitted, at least once a year when requested, physician's notes prepared by Dr. Patricia Merwick (Merwick) indicating bending and lifting restrictions and requesting a light duty accommodation. According to Gerdes, the form and substance of the physician's notes was essentially the same for fifteen years, and USPS allegedly accommodated Gerdes' requests for a light duty accommodation in every instance.

In April 2007, when Gerdes was 53 years old, a supervisor named Carol Rutledge (Rutledge) allegedly asked Gerdes her age and retirement plans. On February 22, 2008, Rutledge allegedly sent Gerdes home despite the fact that Gerdes allegedly had work to perform that was similar to the work she had been performing since April of 2002. Before leaving, Gerdes was allegedly instructed by Rutledge to complete a form relating to leave and to transfer certain computer files into a shared file. On February 28, 2008, Gerdes allegedly provided an updated physician's note from Merwick indicating Gerdes could perform the work she had been performing since April of 2002. USPS allegedly refused to allow Gerdes to return to work. Gerdes includes in her complaint a disability discrimination claim brought under the

Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and an age discrimination claim brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* USPS now moves for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Rehabilitation Act Claim

In analyzing a discrimination claim brought under the Rehabilitation Act, the court applies the same standards used in cases brought pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq. See Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002)(citation omitted); *see also* 29 U.S.C. § 794(d)(stating that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA], as such sections relate to employment").  Under those standards, Gerdes must show as a threshold matter that she is protected under the Rehabilitation Act by showing that she is "a qualified individual with a disability." *Peters*, 311 F.3d at 842 (stating that "[t]he Rehabilitation Act of 1973 protects a 'qualified individual with a disability' from discrimination solely because of the person's disability")(citing 29 U.S.C. § 794(a)). Once Gerdes has established that she is protected by the Rehabilitation Act, Gerdes must then show that she "has suffered an adverse employment action because of [her] disability." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

A.  Whether Gerdes was a Qualified Individual

USPS argues that Gerdes cannot show that she was qualified to perform the essential functions of the job with or without reasonable accommodation.  A qualified individual is defined under the ADA and Rehabilitation Act as a person who is "qualified to perform the essential functions of [a] job with or without reasonable accommodation." *Id.* (citation omitted); *see also* 42 U.S.C. § 12111(8)

4

(defining a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). In the instant action, it is undisputed that in June 2002, Gerdes bid and received a position as a mail processing clerk (Clerk). (R SF Par. 5). The written job description for the Clerk position lists various duties and responsibilities relating to the sorting, processing, and distributing mail, and the collective bargaining unit qualification standard states that "[a]pplicants must be physically able to efficiently perform the duties of the position, which require arduous exertion involving prolonged standing, walking, bending, and reaching, and may involve the handling of heavy containers of mail and parcels weighing up to 70 pounds." (SF Ex. B). It is undisputed that Gerdes submitted light duty requests each year shortly after receiving the Clerk position, and that Gerdes' requests indicated that Gerdes had full restrictions in lifting, pulling, reaching, leaning, stooping, kneeling, bending, climbing, and operating a vehicle, and significant partial restrictions for walking and standing. (R SF Par. 11). Such facts indicate that Gerdes could not perform the essential functions of the job.

Gerdes argues that she performed as a Clerk for six years under the same restrictions, which demonstrates that she could perform the essential functions of the job with reasonable accommodation. The Seventh Circuit has indicated that

employers are not obligated "to create a new position, which contains a subset of the duties performed by those in an existing position, for individuals with permanent impairments." *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 750 (7th Cir. 2011)(citing *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002)). The Seventh Circuit has also indicated that "the ADA does not require permanent assignment to a temporary light-duty job." *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001). Further, under Seventh Circuit precedent, an employer is not required to "manufacture a job that will enable the disabled worker to work despite his disability," and "redundant staffing is not a reasonable accommodation." *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000)(citation omitted). As discussed above, it is undisputed that Gerdes had significant physical restrictions in terms of the work she was able to do, and that the various administrative tasks that Gerdes performed for six years in the Clerk position were assigned to her as part of a temporary, light duty placement. (R SF Par. 9, 11). In addition, Gerdes has not pointed to evidence to dispute USPS's contention that the administrative tasks Gerdes performed under her temporary, light duty assignment were previously performed by clerks as part of their own, regular duties. (R SF Par. 14-15). Nor has Gerdes pointed to evidence to dispute USPS's contention that the administrative tasks Gerdes performed were being assigned back to other employees. (R. SF. Par.

6

18).  Although USPS may have accommodated Gerdes' requests for a light duty assignment for many years, such a fact does not establish that Gerdes could perform the essential duties of a Clerk with reasonable accommodation.  Based on Seventh Circuit precedent and the undisputed facts in this case, Gerdes cannot show that she could perform the essential functions of the Clerk position with or without reasonable accommodation.  Therefore, Gerdes cannot show that she is a qualified individual under the Rehabilitation Act.

### B.  Evidence of Discrimination

In addition, even if Gerdes could show that she was a qualified individual under the Rehabilitation Act, to defeat USPS's motion for summary judgment, Gerdes would have to present sufficient evidence of discrimination under either the direct method or the indirect method of proof.  *Buie*, 366 F.3d at 503.

### 1.  Direct Method of Proof

In proceeding under the direct method of proof, Gerdes may point to either direct evidence or circumstantial evidence of discrimination.  *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)(citing *Buie*, 366 F.3d at 503).  Gerdes has not indicated that she intends to proceed under the direct method of proof.  Regardless, Gerdes has not pointed to any

direct evidence of discrimination, nor has Gerdes presented sufficient circumstantial evidence to establish her disability discrimination claim under the direct method of proof. *See Buie*, 366 F.3d at 503 (indicating that direct evidence of discrimination "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus," and that circumstantial evidence is that which "allows a jury to infer intentional discrimination by the decision-maker")(internal quotations omitted)(citation omitted); *see also Dickerson*, 657 F.3d at 601 (indicating that "[t]he type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action")(citations omitted). Therefore, Gerdes cannot proceed on her Rehabilitation Act claim under the direct method of proof.

### 2. Indirect Method of Proof

In proceeding under the indirect method of proof, Gerdes must establish "that (1) [s]he is disabled under the [Rehabilitation Act]; (2) [s]he was meeting [her] employer's legitimate employment expectations; (3) [s]he suffered an adverse

employment action; and (4) similarly situated employees without a disability were treated more favorably." *Id.* (citations omitted). If Gerdes successfully establishes each element of her *prima facie* case, the burden then shifts to USPS to "identify a legitimate, non-discriminatory reason for its employment decision." *Id.* (citation omitted). If USPS satisfies its burden, Gerdes is then required to "prove by a preponderance of the evidence that [USPS's] reasons are pretextual." *Id.*

UPSP argues that Gerdes has not identified any similarly-situated employees without a disability who were treated more favorably than Gerdes. Although Gerdes has pointed to the fact that she was the only employee with a light duty assignment who was sent home on February 22, 2008, such a fact is not sufficient to defeat USPS's motion for summary judgment on the Rehabilitation Act claim. A similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Ajayi v. Aramark Business Services, Inc.,* 336 F.3d 520, 531-32 (7th Cir. 2003)(stating that "[t]o evaluate whether two employees are directly comparable, we consider all of the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision"). Gerdes admitted in her deposition that

she was the only Clerk with a light duty assignment at the Hinsdale station. (SF Ex. F, 103). Gerdes also admitted that she did not know the specific restrictions of other Clerks working under Rutledge's supervision at other stations who were on light duty assignments. (SF Ex. F, 93-95, 103-104). In addition, the evidence shows that the individuals identified by Gerdes did not have restrictions that were comparable to Gerdes' restrictions. (SF Ex. F, 93); (SF Ex. N, 4); (SF Ex. K, 111-112). Based on the undisputed record, Gerdes cannot establish that any similarly-situated non-disabled employees were treated more favorably than Gerdes.

In addition, even if Gerdes could establish that similarly-situated non-disabled employees were treated more favorably than she was, Gerdes cannot establish the USPS's legitimate, non-discriminatory reason for sending her home was pretext. The undisputed record shows that after sending Gerdes home on February 28, 2008, USPS attempted to determine the true extent of Gerdes' medical restrictions and to find work for Gerdes that would fall within those restrictions. It is undisputed that on February 20, 2008, Rutledge and a USPS medical officer conducted a medical review of employees with light duty assignments to determine whether such employees could perform duties in other service areas within their medical restrictions. (R SF Par. 16). In addition, as indicated above, the undisputed evidence shows that the administrative tasks Gerdes performed under her temporary, light duty

assignment were previously performed by Clerks as part of their own, regular duties, and that the administrative tasks Gerdes performed were being assigned back to other employees. (R. SF. Par. 13-14, 18). In addition, it is undisputed that on February 22, 2008, Gerdes was merely sent home, and that additional information regarding Gerdes' medical restrictions was sought by USPS to clarify what duties Gerdes could perform. (R SF Par. 19, 23). It is further undisputed that after receiving information that Gerdes' restrictions were not as severe as reported on Gerdes' light duty request forms, Rutledge advised Gerdes to return to work. (R SF Par. 23-24); (SF Ex. F, 84). In addition, the undisputed evidence shows that Gerdes did not report to work as instructed or call to report that she would be absent. (SF Ex. R); (SF Ex. F, 84). It is further undisputed that on September 29, 2008, USPS agreed to a union representative's request that Gerdes be evaluated a third time to clarify her medical restrictions, that the third evaluation occurred in November 2009, and that a report (Report) was issued by the doctor who conducted the medical examination indicating that Gerdes could lift ten pounds and could freely bend and twist. (R SF Par. 26). The undisputed evidence shows that Gerdes never followed-up with Rutledge after receiving the Report. (SF Ex. F 76). Based on such undisputed facts, Gerdes cannot show that USPS's stated reason for sending Gerdes home was a pretext. Based upon the above, Defendant's motion for summary judgement on the Rehabilitation Act

claim is granted.

II. ADEA Claim

Gerdes has not addressed USPS's arguments relating to her ADEA claim. However, in determining whether to grant USPS's motion for summary judgment on the ADEA claim, the court applies the same analysis that it applied to the claim brought under the Rehabilitation Act. *See, e.g., Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 603 (7th Cir. 2012); *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297-98 (7th Cir. 2010). Gerdes cannot succeed on her ADEA claim under the direct method of proof, since she has failed to point to any direct or circumstantial evidence of age discrimination. Nor can Gerdes succeed on her ADEA claim under the indirect method, since she has failed to point to any similarly-situated younger employee who was treated more favorably than her, and since, as discussed above, she has not offered any evidence of animus based on age to rebut USPS's legitimate reason for sending her home from work on February 22, 2008. Based on the above, Defendant's motion for summary judgement on the ADEA claim is also granted.

## CONCLUSION

Based on the foregoing analysis, Defendant's motion for summary judgment

is granted.

_____
Samuel Der-Yeghiayan United States District Court Judge

Dated: December 13, 2012